UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
UNITED STATES OF AMERICA,

               Plaintiff,

  -against-                              17 Civ. No. 0346

THE CITY OF NEW YORK,

               Defendant.

---------------------------------------------------------------- x

## COMPLAINT

1.     The United States of America (the "United States" or the "Government"), by its attorney, Preet Bharara, the United States Attorney for the Southern District of New York, brings this suit to remedy and prevent violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations, as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, and its implementing regulations, 28 C.F.R. Part 35 (the "ADA"), by defendant The City of New York ("Defendant"). Defendant violated the ADA by failing to hire an individual living with the Human Immunodeficiency Virus ("HIV") because of his disability. The United States seeks both injunctive and monetary relief to redress the Defendant's illegal and discriminatory act.

## PARTIES

2.     Plaintiff is the United States of America.

3.     Defendant is a person within the meaning of 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e(a).

4.     Defendant is an employer within the meaning of 42 U.S.C. §§ 12111(5) and 2000e(b), and a covered entity within the meaning of 42 U.S.C. § 12111(2).

5.     Raymond Parker ("Parker") is an individual with a disability within the meaning of 42 U.S.C. § 12102.  Parker is a 60-year-old male with HIV, who resides in the City of New York, Borough of Brooklyn.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 1345, and 42 U.S.C. § 12188.  This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

7.     The Department of Justice has authority to sue in this matter pursuant to 42 U.S.C. § 12188.

8.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)-(2).

## LEGAL FRAMEWORK

9.     The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

10.    The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).

11.    The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

12.    The ADA defines "disability" as "(A) a physical or mental impairment that

substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

13. The ADA regulations define a "physical or mental impairment" as defined as (1) "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) [a]ny mental or psychological disorder, such as an intellectual disability…, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

14. The ADA defines "major life activities" to include, but not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 42 U.S.C. § 12102(2)(A). In addition, a "major life activity" also includes the "operation of a major bodily function, including … functions of the immune system [and] normal cell growth." *Id.* § 12102(2)(B).

15. "The term 'substantially limits' shall be construed broadly in favor of expansive coverage," and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii). In addition, the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." *Id.* § 1630.2(j)(1)(vi).

16. Being HIV positive, even if asymptomatic, is a disability for purposes of the

ADA.  28 C.F.R. § 36.104.

## FACTUAL ALLEGATIONS

17. In or around July 2013, Parker applied for a position as a Police Communications Technician ("PCT") with the New York City Police Department ("NYPD").

18. The job posting for a PCT position provided that NYPD PCTs "serve as 911 emergency call-takers; obtain necessary information from callers in order to initiate emergency service; serve as radio dispatchers of police resources; perform clerical, administrative and other duties related to the provision of emergency service; and perform related work."  A copy of the PCT job posting is attached hereto as Exhibit A.

19. Parker is qualified for the position of PCT.

20. Parker applied for the PCT position online, and was instructed to report to NYPD Police Plaza in Queens for a screening process, which included a background check.

21. Upon reporting to Police Plaza on August 20, 2013, Parker successfully completed the background check process and other paperwork.

22. At that time, Parker received from the NYPD a conditional offer of employment for the PCT position.

23. Next, Parker was required to undergo a medical examination.

24. Upon reporting for his medical examination, Parker completed a medical history questionnaire.  Parker noted his HIV, as well as the medications he was taking, which included antiretroviral HIV medications.

25. In addition to completing the medical paperwork, Parker underwent several medical examinations, including a physical, a lung test, an eyesight test, as well as other measurements.

26. Shortly after the medical examination component of the process, the NYPD called Parker and informed him that he needed to submit additional paperwork.

27. On September 4, 2013, the NYPD instructed Parker to submit documentation of a blood test, including Parker's CD4 count. A copy of the September 4, 2013 notice of medical review status is attached hereto as Exhibit B.

28. Parker submitted the letter from his psychiatrist to the NYPD, along with a clinical lab report, dated August 23, 2013.

29. On December 3, 2013, the NYPD sent Parker a "Notice of Medical Disqualification [for a] Provisional/Non-Competitive candidate," which stated that Parker was medically disqualified for the PCT position due to his "HIV low CD4 count." A copy of the December 3, 2013, notice from the NYPD is attached hereto as Exhibit C.

30. On August 26, 2014, Parker timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination based on the NYPD's failure to hire him because of his HIV-positive status. A copy of the EEOC Charge of Discrimination is attached hereto as Exhibit D.

31. Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated the charge, found reasonable cause to believe that the allegations of discrimination on the basis of disability were true, attempted unsuccessfully to conciliate a voluntary resolution of the charge, and subsequently referred the matter to the Department of Justice.

**FIRST CLAIM FOR RELIEF**

**Discrimination Against Parker on the Basis of Disability**

32. The United States incorporates by reference paragraphs 1 through 31 as if they

were repeated in full herein.

33. Parker is a qualified individual with a disability within the meaning of the ADA.

34. Parker can fully perform the essential functions of the NYPD PCT position with or without an accommodation.

35. The NYPD did not provide Parker with a reasonable accommodation.

36. NYPD's failure to hire Parker because of his disability was an adverse employment action.

37. The NYPD did not have a legitimate non-discriminatory reason for failing to hire Parker.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court enter judgment that:

a. Declares that the discriminatory action of Defendant as set forth above violated Title I of the ADA, and its implementing regulations;

b. Enjoins Defendant and the NYPD from engaging in any act or practice that discriminates against any employee or applicant for employment on the basis of disability in violation of Title I of the ADA;

c. Awards compensatory damages and injunctive relief to Parker as would fully compensate him for injuries caused by the NYPD's discriminatory conduct; and

    d.  Grants such other additional relief as the Court deems just and proper.

Dated: January 17, 2017
New York, New York

Respectfully submitted,

*/s/ Vanita Gupta*
VANITA GUPTA
Principal Deputy Assistant Attorney General

PREET BHARARA
United States Attorney
Southern District of New York

By: */s/ Natasha W. Teleanu*
NATASHA W. TELEANU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2528
Fax: (212) 637-2786
E-mail: natasha.teleanu@usdoj.gov